**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.**

| | |
|---|---|
| SISVEL INTERNATIONAL S.A., 3G LICENSING S.A., and SISVEL S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> NOETIC, INC. and SUN CUPID TECHNOLOGY (HK) LTD. <br><br> Defendants. | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Sisvel International S.A., 3G Licensing S.A. and Sisvel S.p.A. (collectively, "Plaintiffs"), for their Complaint against Defendants Noetic, Inc. and Sun Cupid Technology (HK) Ltd. ("Noetic" or "Defendants"), allege the following:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2.     Sisvel International S.A. ("Sisvel") is an entity organized under the laws of Luxembourg with a place of business at 6, Avenue Marie Thérèse, 2132 Luxembourg, Grand Duchy of Luxembourg.

3.     3G Licensing S.A. ("3G Licensing") is also an entity organized under the laws of Luxembourg with a place of business at 6, Avenue Marie Thérèse, 2132 Luxembourg, Grand Duchy of Luxembourg.

4.      Sisvel S.p.A. ("Sisvel S.p.A.") is an entity organized under the laws of Italy with a place of business at Via Sestriere 100, 10060 None (TO) Italy.  "Sisvel" is an acronym for "Società Italiana per lo Sviluppo Dell'Elettronica."

5.      Founded in Italy in 1982, Sisvel is a world leader in fostering innovation and managing intellectual property.  Sisvel works with its partners offering a comprehensive approach to patent licensing: from issuing initial calls for essential patents; facilitating discussions among stakeholders; developing multiparty license agreements; executing and administering licenses; to collecting and distributing royalties.  At the same time, Sisvel actively promotes a culture of respect and understanding of the intellectual property and innovation ecosystem through, for example, its regular presence at the key consumer electronics trade fairs and intellectual property events, participation in policy discussions and conferences, as well as open dialogues with a number of government bodies, standard-setting organizations and industry associations.

6.      In early 2016, Sisvel initiated licensing activities in North America via its U.S. subsidiary, Sisvel US Inc.

7.      A subsidiary of Sisvel founded in 2015, 3G Licensing, is an intellectual property company operating in the consumer electronics and telecommunications industry.  The company is composed of specialists with an extensive experience in administering licensing programs on behalf of third-party companies and organizations.

8.      A subsidiary of Sisvel founded in 1982, Sisvel S.p.A., is an intellectual property company operating primarily in areas of wireless communication, audio/video coding/decoding, digital video display, and broadband technology.  The company is composed of specialists with

extensive experience to support Sisvel's efforts in licensing programs and patent pools, primarily on behalf of third-party companies and organizations.

9.    Upon information and belief, Defendant Noetic, Inc. is a corporation organized and existing under the laws of Minnesota, with an office and store at 7640 NW 25th Street, Miami Florida 33122.  Defendant Noetic, Inc. maintains a registered agent for service of process in Florida at Registered Agents Inc., 7901 4th Street N., Suite 300, St. Petersburg, Florida.

10.    Upon information and belief, Defendant Sun Cupid Technology (HK) Ltd. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at 16F CEO Tower, 77 Wing Hong Street, Lai Chi Kok, Kowloon, Hong Kong SAR.

11.    Upon information and belief, Noetic, Inc. is a subsidiary of Sun Cupid Technology (HK) Ltd.

12.    Upon information and belief, Defendants sell and offer to sell products and services throughout the United States, including in this judicial district, and introduce products and services that enter into the stream of commerce and that incorporate infringing technology knowing that they would be sold in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter jurisdiction of this case under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent law – 35 U.S.C. § 101, *et seq.*).

14.    This Court has personal jurisdiction over Defendants, because Defendants have sufficient minimum contacts within the State of Florida and this District, pursuant to due process, as Defendants have purposefully availed themselves of the privileges of conducting business in the State of Florida by regularly conducting and soliciting business within the State of Florida and within this District, and because Plaintiffs' causes of action arise directly from Defendants' business contacts and other activities in the State of Florida and this District.  Further, this Court

has personal jurisdiction over Defendants because they have purposely availed themselves of the privileges and benefits of the laws of the State of Florida.

15.     Venue is proper in this judicial district as to Noetic, Inc. under 28 U.S.C. § 1400(b) because Noetic, Inc. has a regular and established place of business in this district.  For example, Noetic, Inc. has an office and store at 7640 NW 25th Street, Miami Florida 33122.

16.     Venue is proper in this judicial district as to Sun Cupid Technology (HK) Ltd. because it is a foreign corporation that may be sued in any judicial district under 28 U.S.C. § 1391(c).

<u>**ACCUSED INSTRUMENTALITIES**</u>

17.     Defendants make, use, sell and offer for sale, provide, and cause to be used, now and within the past six years the A Series including the A1+, A4L, A5L, A6L and A6L-G, the G Series including the G1, G3, G3+, the F4L, R1, X6 phones, and the T2 Android Tablet ("Accused Instrumentalities"), among other such devices.

18.     Defendants advertise that the A series is compliant with the 3G and 4G cellular network standards.  (*See, e.g.*, product information for the A1+, attached hereto as Exhibit 1, the A4L, attached hereto as Exhibit 2, the A5L, attached hereto as Exhibit 3, the A6L, attached hereto as Exhibit 4 and the A6L-G, attached hereto as Exhibit 5.)

19.     Defendants advertise that the G series is compliant with the 3G and 4G cellular network standards.  (*See, e.g.*, product information for the G1, attached hereto as Exhibit 6, the G3, attached hereto as Exhibit 7 and the G3+, attached hereto as Exhibit 8.)

20.     Defendants advertise that the F4L is compliant with the 3G and 4G cellular network standards.  (*See* product information for the F4L, attached hereto as Exhibit 9.)

21.     Defendants advertise that the R1 is compliant with the 3G and 4G cellular network standards.  (*See* product information for R1, attached hereto as Exhibit 10.)

22.     Defendants advertise that the X6 is compliant with the 3G and 4G cellular network standards.  (*See* product information for X6, attached hereto as Exhibit 11.)

23.     Defendants advertise that the T2 Android Tablet is compliant with the 3G cellular network standards.  (*See* product information for T2 Android Tablet, attached hereto as Exhibit 12.)

## **BACKGROUND**

24.     Plaintiffs are the owners by assignment of a portfolio of patents, including the nine patents described in detail in the counts below (collectively, the "Asserted Patents"), that relate to technology for cellular communications networks, including variations or generations of cellular communication network technology such as, but not limited to 3G, and 4G.

25.     Cellular communication network technology is used to provide data transmission across mobile cellular networks.

26.     U.S. Patent No. 7,979,070 ("the '070 patent") was assigned to Nokia Corporation either directly from the inventors or through mergers.  In 2011, the '070 patent was assigned to a trust by Nokia Corporation.  On April 10, 2012, Sisvel obtained ownership of the '070 patent.

27.     U.S. Patent Nos. 8,189,611 ("the '611 patent") and 8,600,383 ("the '383 patent") were assigned to Research in Motion Ltd. from the inventors.  Research in Motion Ltd. changed its name to Blackberry, Ltd. in 2013.  On November 16, 2018, the '611 and '383 patents were assigned to Provenance Asset Group LLC from Blackberry, Ltd.  On April 5, 2019, Sisvel obtained ownership of the '611 and '383 patents from Provenance Asset Group LLC.  On July 11, 2019, Sisvel assigned the '611 and '383 patents to 3G Licensing.

28.     U.S. Patent Nos. 7,215,653 ("the '653 patent"), 7,319,718 ("the '718 patent"), 7,551,625 ("the '625 patent"), and 7,580,388 ("the '388 patent") were assigned to LG Electronics

Inc. from the inventors.  On February 10, 2020, 3G Licensing obtained ownership of the '653, '718, '625, and '388 patents from LG Electronics Inc.

29.      U.S. Patent Nos. 7,869,396 ("the '396 patent") and 8,971,279 ("the '279 patent") were assigned to LG Electronics Inc. from the inventors.  On March 28, 2014, the '396 and '279 patents were assigned to Thomson Licensing SAS from LG Electronics.  On September 23, 2019, Sisvel S.p.A. obtained ownership of the '396 and '279 patents from Thomson Licensing SAS.

30.      Sisvel, 3G Licensing and Sisvel S.p.A. are the rightful owners of the Asserted Patents and hold the entire right, title and interest in the Asserted Patents.

31.      Sisvel sent correspondence to Defendants on May 21, 2015, offering Defendants a license to patents owned and/or managed by Sisvel that are essential to the 4G cellular standard. Follow up letters were sent on July 16, and August 6, 2015.

32.      On December 17, 2015 Sisvel sent correspondence offering a license for 3G essential patents.

33.      Sisvel sent another correspondence on February 24, 2016, about the 3G and 4G essential patents offered for a license.  This correspondence included a list of those patents.  The '070 patent was included on the list.

34.      On November 12, 2019, Sisvel sent correspondence again offering a license to 3G and 4G essential patents to Defendants.  That correspondence included a draft license agreement listing the '070, '611, '383, '396, and '279 patents.

35.      On February 12, 2020, Sisvel sent another correspondence with links to Sisvel's 3G and 4G patent brochures.  The links included the '070, '611, '383, '653, '718, '625, '388, '396, and '279 patents.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,979,070

36.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this First Claim for Relief.

37.    On July 12, 2011, the '070 patent, entitled "Mobile Equipment for Sending an Attach Request to a Network" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 12/232,724 filed on September 23, 2008.  The '070 patent claims priority to a U.S. Patent No. 7,035,621 filed on October 13, 2000.  A true and correct copy of the '070 patent is attached as Exhibit 13.

38.    Plaintiff Sisvel is the assignee and owner of the right, title and interest in and to the '070 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

39.    The '070 patent discloses a system and method that Plaintiffs believe is essential under the 4G cellular standard as explained in attached Exhibit 14.  Thus, Defendants' Accused Instrumentalities that are compliant with the 4G standard ("4G Capable Accused Instrumentalities") are necessarily infringing the '070 patent.

40.    Defendants were made aware of the '070 patent and their infringement thereof by correspondence from Plaintiffs on February 24, 2016 as discussed in paragraph 33 above.

41.    Defendants were further made aware of the '070 patent and its infringement thereof at least as early as the date of filing of this Complaint.

42.    Upon information and belief, Defendants have and continue to directly infringe at least claims 1, 2 and/or 5 of the '070 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 4G Capable Accused Instrumentalities that infringe the patented methods.

43.     Since February 24, 2016, when they first were made aware of the '070 patent, Defendants' infringement has been, and continues to be willful.

44.     Upon information and belief, these 4G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

45.     Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1, 2 and/or 5 of the '070 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 4G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '070 patent.

46.     In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 4G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 4G Capable Accused Instrumentalities.

47.     Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 4G Capable Accused Instrumentalities necessarily infringes the '070 patent because the invention of the '070 patent is required to comply with the relevant cellular standard.  Defendants advertise their 4G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '070 patent.  Defendants have knowingly induced infringement since at least February 24, 2016, when Defendants were first made aware of the '070 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

48.    Upon information and belief, the Defendants are liable as contributory infringers of the '070 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 4G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '070 patent.  Each of 4G Capable Accused Instrumentalities is a material component for use in practicing the '070 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 4G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

49.    Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,600,383

50.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Second Claim for Relief.

51.    On December 3, 2013, the '383 patent, entitled "Apparatus and Method for Making Measurements in Mobile Telecommunications System User Equipment" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 13/617,241 filed on September 24, 2012.  The '383 patent claims priority to U.S. Patent No. 7,463,887 filed on August 18, 2004.  A true and correct copy of the '383 patent is attached as Exhibit 15.

52.    Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '383 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

53.    The '383 patent discloses a system and method that Plaintiffs believe is essential under the 4G cellular standard as explained in attached Exhibit 16.  Thus, Defendants' 4G Capable Accused Instrumentalities are necessarily infringing the '383 patent.

54.     Defendants were made aware of the '383 patent and their infringement thereof by correspondence from Plaintiffs on November 12, 2019 as discussed in paragraph 34 above.

55.     Defendants were made further aware of the '383 patent and their infringement thereof at least as early as the date of filing of this Complaint.

56.     Upon information and belief, Defendants have and continue to directly infringe at least claims 1, 9, 17, 25, 49, 58, 66, 74, 82, and/or 90 of the '383 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 4G Capable Accused Instrumentalities that infringe the patented methods.

57.     Since November 12, 2019, when they first were made aware of the '383 patent, Defendants' infringement has been, and continues to be willful.

58.     Upon information and belief, these 4G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

59.     Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1, 9, 17, 25, 49, 58, 66, 74, 82, and/or 90 of the '383 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 4G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '383 patent.

60.     In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 4G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 4G Capable Accused Instrumentalities.

61.     Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 4G Capable Accused Instrumentalities necessarily infringes the '383 patent because the invention of the '383 patent is required to comply with the relevant cellular standard.  Defendants advertise their 4G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '383 patent.  Defendants have knowingly induced infringement since at least November 12, 2019, when Defendants were first made aware of the '383 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

62.     Upon information and belief, the Defendants are liable as contributory infringers of the '383 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 4G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '383 patent.  Each of the 4G Capable Accused Instrumentalities is a material component for use in practicing the '383 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 4G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

63.     Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,189,611

64.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Third Claim for Relief.

65.     On May 29, 2012, the '611 patent, entitled "System and Method for Resolving Contention Among Applications Requiring Data Connections Between a Mobile Communications Device and a Wireless Network" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 12/326,466 filed on December 2, 2008.  The '611

patent claims priority to U.S. Patent No. 7,474,671 filed on November 4, 2005. A true and correct copy of the '611 patent is attached as Exhibit 17.

66.     Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '611 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

67.     The '611 patent discloses a system and method that Plaintiffs believe is essential under the 4G cellular standard as explained in attached Exhibit 18. Thus, Defendants' 4G Capable Accused Instrumentalities are necessarily infringing the '611 patent.

68.     Defendants were made aware of the '611 patent and their infringement thereof by correspondence from Plaintiffs on November 12, 2019 as discussed in paragraph 34 above.

69.     Defendants were made further aware of the '611 patent and their infringement thereof at least as early as the date of filing of this Complaint.

70.     Upon information and belief, Defendants have and continues to directly infringe at least claims 1, 7, and/or 8 of the '611 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 4G Capable Accused Instrumentalities that infringe the patented methods.

71.     Since November 12, 2019, when they first were made aware of the '611 patent, Defendants' infringement has been, and continues to be willful.

72.     Upon information and belief, these 4G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

73.     Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1, 7, and/or 8 of the '611 patent under 35 U.S.C. § 271(b) by,

among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 4G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '611 patent.

74.     In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 4G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 4G Capable Accused Instrumentalities.

75.     Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 4G Capable Accused Instrumentalities necessarily infringes the '611 patent because the invention of the '611 patent is required to comply with the relevant cellular standard.  Defendants advertise their 4G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '611 patent.  Defendants have knowingly induced infringement since at least November 12, 2019, when Defendants were first made aware of the '611 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

76.     Upon information and belief, the Defendants are liable as contributory infringers of the '611 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 4G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '611 patent.  Each of the 4G Capable Accused Instrumentalities is a material component for use in practicing the '611 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing

use.  In particular, each of the 4G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

77.    Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,215,653

78.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Fourth Claim for Relief.

79.    On May 8, 2007, the '653 patent, entitled "Controlling Data Transmission Rate on the Reverse Link for Each Mobile Station in a Dedicated Manner" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 10/071,243 filed on February 11, 2002.  A true and correct copy of the '653 patent is attached as Exhibit 19.

80.    Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '653 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

81.    The '653 patent discloses a system and method that Plaintiffs believe is essential under the 3G cellular standard as explained in attached Exhibit 20.  Thus, Defendants' Accused Instrumentalities that are compliant with the 3G standard ("3G Capable Accused Instrumentalities") are necessarily infringing the '653 patent.

82.    Defendants were made aware of the '653 patent and their infringement thereof at least as early as February 12, 2020 as discussed in paragraph 35 above.

83.    Defendants were further made aware of the '653 patent and their infringement thereof at least as early as the date of filing of this Complaint.

84.    Upon information and belief, Defendants have and continue to directly infringe at least claims 34 and/or 37 of the '653 patent by making, using, selling, importing, offering for sale,

providing, practicing, and causing the 3G Capable Accused Instrumentalities that infringe the patented methods.

85.     Since February 12, 2020 when they first were made aware of the '653 patent, Defendants' infringement has been, and continues to be willful.

86.     Upon information and belief, these 3G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

87.     Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 34 and/or 37 of the '653 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 3G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '653 patent.

88.     In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 3G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 3G Capable Accused Instrumentalities.

89.     Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 3G Capable Accused Instrumentalities necessarily infringes the '653 patent because the invention of the '653 patent is required to comply with the relevant cellular standard.  Defendants advertise their 3G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '653 patent.  Defendants have knowingly induced infringement since at least February 12, 2020, when Defendants were first

made aware of the '653 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

90.     Upon information and belief, the Defendants are liable as contributory infringers of the '653 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 3G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '653 patent.  Each of the 3G Capable Accused Instrumentalities is a material component for use in practicing the '653 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 3G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

91.     Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 7,319,718

92.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Fifth Claim for Relief.

93.     On January 15, 2008, the '718 patent, entitled "CQI Coding Method for HS-DPCCH" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 10/365,498 filed on February 13, 2003.  A true and correct copy of the '718 patent is attached as Exhibit 21.

94.     Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '718 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

95.     The '718 patent discloses a system and method that Plaintiffs believe is essential under the 3G cellular standard as explained in attached Exhibit 22.  Thus, Defendants' 3G Capable Accused Instrumentalities are necessarily infringing the '718 patent.

96.     Defendants were made aware of the '718 patent and their infringement thereof at least as early as February 12, 2020 as discussed in paragraph 35 above.

97.     Defendants were further made aware of the '718 patent and their infringement thereof at least as early as the date of filing of this Complaint.

98.     Upon information and belief, Defendants have and continue to directly infringe at least claims 15 and/or 16 of the '718 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 3G Capable Accused Instrumentalities that infringe the patented methods.

99.     Since February 12, 2020 when they first were made aware of the '718 patent, Defendants' infringement has been, and continues to be willful.

100.    Upon information and belief, these 3G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

101.    Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 15 and/or 16 of the '718 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 3G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '718 patent.

102.    In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 3G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 3G Capable Accused Instrumentalities.

103.    Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 3G Capable Accused Instrumentalities necessarily infringes the '718 patent because the invention of the '718 patent is required to comply with the relevant cellular standard.  Defendants advertise their 3G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '718 patent.  Defendants have knowingly induced infringement since at least February 12, 2020, when Defendants were first made aware of the '718 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

104.    Upon information and belief, the Defendants are liable as contributory infringers of the '718 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 3G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '718 patent.  Each of the 3G Capable Accused Instrumentalities is a material component for use in practicing the '718 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 3G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

105.    Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 7,551,625

106.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Sixth Claim for Relief.

107.    On June 23, 2009, the '625 patent, entitled "Method of Scheduling an Uplink Packet Transmission Channel in a Mobile Communication System" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 11/097,011 filed on March 31, 2005.  A true and correct copy of the '625 patent is attached as Exhibit 23.

108.    Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '625 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

109.    The '625 patent discloses a system and method that Plaintiffs believe is essential under the 3G cellular standard as explained in attached Exhibit 24.  Thus, Defendants' 3G Capable Accused Instrumentalities are necessarily infringing the '625 patent.

110.    Defendants were made aware of the '625 patent and their infringement thereof at least as early as February 12, 2020 as discussed in paragraph 35 above.

111.    Defendants were further made aware of the '625 patent and their infringement thereof at least as early as the date of filing of this Complaint.

112.    Upon information and belief, Defendants have and continue to directly infringe at least claims 16 and/or 39 of the '625 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 3G Capable Accused Instrumentalities that infringe the patented methods.

113.    Since February 12, 2020 when they first were made aware of the '625 patent, Defendants' infringement has been, and continues to be willful.

114.    Upon information and belief, these 3G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

115.    Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 16 and/or 39 of the '625 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients,

customers/subscribers, and end users, whose use of the 3G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '625 patent.

116.   In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 3G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 3G Capable Accused Instrumentalities.

117.   Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 3G Capable Accused Instrumentalities necessarily infringes the '625 patent because the invention of the '625 patent is required to comply with the relevant cellular standard.  Defendants advertise their 3G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '625 patent.  Defendants have knowingly induced infringement since at least February 12, 2020, when Defendants were first made aware of the '718 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

118.   Upon information and belief, the Defendants are liable as contributory infringers of the '625 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 3G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '625 patent.  Each of the 3G Capable Accused Instrumentalities is a material component for use in practicing the '625 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 3G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

119.   Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 7,580,388

120.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Seventh Claim for Relief.

121.    On August 25, 2009, the '388 patent, entitled "Method and Apparatus for Providing Enhanced Messages on Common Control Channel in Wireless Communication System" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 11/065,872 filed on February 25, 2005.  The '388 patent claims priority to U.S. Provisional Patent Application No. 60/576,214 filed on June 1, 2004 and Provisional Patent Application No. 60/589,630 filed on July 20, 2004.  A true and correct copy of the '388 patent is attached as Exhibit 25.

122.    Plaintiff 3G Licensing is the assignee and owner of the right, title and interest in and to the '388 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

123.    The '388 patent discloses a system and method that Plaintiffs believe is essential under the 3G cellular standard as explained in attached Exhibit 26.  Thus, Defendants' 3G Capable Accused Instrumentalities are necessarily infringing the '388 patent.

124.    Defendants were made aware of the '388 patent and their infringement thereof at least as early as February 12, 2020 as discussed in paragraph 35 above.

125.    Defendants were further made aware of the '388 patent and their infringement thereof at least as early as the date of filing of this Complaint.

126.    Upon information and belief, Defendants have and continue to directly infringe at least claims 1 and/or 33 of the '388 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 3G Capable Accused Instrumentalities that infringe the patented methods.

127.    Since February 12, 2020 when they first were made aware of the '388 patent, Defendants' infringement has been, and continues to be willful.

128.    Upon information and belief, these 3G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

129.    Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1 and/or 33 of the '388 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 3G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '388 patent.

130.    In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 3G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 3G Capable Accused Instrumentalities.

131.    Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 3G Capable Accused Instrumentalities necessarily infringes the '388 patent because the invention of the '388 patent is required to comply with the relevant cellular standard.  Defendants advertise their 3G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '388 patent.  Defendants have knowingly induced infringement since at least February 12, 2020, when Defendants were first made aware of the '388 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

132.    Upon information and belief, the Defendants are liable as a contributory infringers of the '388 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 3G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '388 patent.  Each of the 3G Capable Accused Instrumentalities is a material component for use in practicing the '388 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 3G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

133.    Plaintiffs have been harmed by Defendants' infringing activities.

## COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 7,869,396

134.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Eighth Claim for Relief.

135.    On January 11, 2011, the '396 patent, entitled "Data Transmission Method and Data Re-Transmission Method" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 12/158,646 filed on January 3, 2007.  The '396 patent claims priority to U.S. Provisional Patent Application No. 60/757,063 filed on January 5, 2006.  A true and correct copy of the '396 patent is attached as Exhibit 27.

136.    Plaintiff Sisvel S.p.A. is the assignee and owner of the right, title and interest in and to the '396 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

137.    The '396 patent discloses a system and method that Plaintiffs believe is essential under the 4G cellular standard as explained in attached Exhibit 28.  Thus, Defendants' 4G Capable Accused Instrumentalities are necessarily infringing the '396 patent.

138.    Defendants were made aware of the '396 patent and their infringement thereof by correspondence from Plaintiffs on November 12, 2019 as discussed in paragraph 34 above.

139.    Defendants were made further aware of the '396 patent and their infringement thereof at least as early as the date of filing of this Complaint.

140.    Upon information and belief, Defendants have and continue to directly infringe at least claims 1, 6 and/or 8 of the '396 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 4G Capable Accused Instrumentalities that infringe the patented methods.

141.    Since November 12, 2019 when they first were made aware of the '396 patent, Defendants' infringement has been, and continues to be willful.

142.    Upon information and belief, these 4G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

143.    Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1, 6 and/or 8 of the '396 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 4G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '396 patent.

144.    In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 4G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 4G Capable Accused Instrumentalities.

145.    Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 4G Capable Accused Instrumentalities necessarily infringes the '396 patent because the invention of the '396 patent is required to comply with the relevant cellular standard.  Defendants advertise their 4G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '396 patent.  Defendants have knowingly induced infringement since at least November 12, 2019, when Defendants were first made aware of the '396 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

146.    Upon information and belief, the Defendants are liable as contributory infringers of the '396 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 4G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '396 patent.  Each of the 4G Capable Accused Instrumentalities is a material component for use in practicing the '396 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing use.  In particular, each of the 4G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

147.    Plaintiffs have been harmed by Defendants' infringing activities.

### COUNT IX – INFRINGEMENT OF U.S. PATENT NO. 8,971,279

148.    The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Ninth Claim for Relief.

149.    On March 3, 2015, the '279 patent, entitled "Method and Apparatus for Indicating Deactivation of Semi-Persistent Scheduling" was duly and legally issued by the United States Patent and Trademark Office from Patent Application No. 13/791,421 filed on March 8, 2013. The '279 patent claims priority to U.S. Provisional Patent Application Nos. 61/114,440 filed on

November 13, 2008 and 61/119,375 filed on December 3, 2008.  A true and correct copy of the '279 patent is attached as Exhibit 29.

150.    Plaintiff Sisvel S.p.A. is the assignee and owner of the right, title and interest in and to the '279 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

151.    The '279 patent discloses a system and method that Plaintiffs believe is essential under the 4G cellular standard as explained in attached Exhibit 30.  Thus, Defendants' 4G Capable Accused Instrumentalities are necessarily infringing the '279 patent.

152.    Defendants were made aware of the '279 patent and their infringement thereof by correspondence from Plaintiffs on November 12, 2019 as discussed in paragraph 34 above.

153.    Defendants were made further aware of the '279 patent and their infringement thereof at least as early as the date of filing of this Complaint.

154.    Upon information and belief, Defendants have and continue to directly infringe at least claims 1 and/or 11 of the '279 patent by making, using, selling, importing, offering for sale, providing, practicing, and causing the 4G Capable Accused Instrumentalities that infringe the patented methods.

155.    Since November 12, 2019 when they first were made aware of the '279 patent, Defendants' infringement has been, and continues to be willful.

156.    Upon information and belief, these 4G Capable Accused Instrumentalities are used, marketed, provided to, and/or used by or for the Defendants' partners, clients, customers/subscribers and end users across the country and in this District.

157.    Upon information and belief, Defendants have induced and continue to induce others to infringe at least claims 1 and/or 11 of the '279 patent under 35 U.S.C. § 271(b) by, among

other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendants' partners, clients, customers/subscribers, and end users, whose use of the 4G Capable Accused Instrumentalities constitutes direct infringement of at least one claim of the '279 patent.

158.    In particular, the Defendants' actions that aid and abet others such as their partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the 4G Capable Accused Instrumentalities and providing instruction materials, training, and services regarding the 4G Capable Accused Instrumentalities.

159.    Any party, including Defendants' partners, clients, customers/subscribers, and end users, using the 4G Capable Accused Instrumentalities necessarily infringes the '279 patent because the invention of the '279 patent is required to comply with the relevant cellular standard.  Defendants advertise their 4G Capable Accused Instrumentalities as compliant with the relevant cellular standard, which induces others to infringe the '279 patent.  Defendants have knowingly induced infringement since at least November 12, 2019, when Defendants were first made aware of the '279 patent during extensive correspondence with Plaintiffs as discussed in paragraphs 31-35 above.

160.    Upon information and belief, the Defendants are liable as contributory infringers of the '396 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the 4G Capable Accused Instrumentalities that infringe the patented methods, to be especially made or adapted for use in an infringement of the '279 patent.  Each of the 4G Capable Accused Instrumentalities is a material component for use in practicing the '279 patent and is specifically made and is not a staple article of commerce suitable for substantial non-infringing

use.  In particular, each of the 4G Capable Accused Instrumentalities is advertised to be compliant with the relevant standard and primarily used in compliance with that standard.

161.    Plaintiffs have been harmed by Defendants' infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for themselves and against Defendants as follows:

A.    An adjudication that Defendants have infringed the '070, '383, '611, '653, '718, '625, '388, '396, and '279 patents;

B.    An award of damages to be paid by Defendants adequate to compensate Plaintiffs for Defendants' past infringement of the '070, '383, '611, '653, '718, '625, '388, '396, and '279 patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiffs' reasonable attorneys' fees; and

D.    An award to Plaintiffs of such further relief at law or in equity as the Court deems just and proper.

Dated: May 15, 2020

/s/Jorge Espinosa/
Jorge Espinosa, Esq.
Florida Bar No: 779032
jespinosa@etlaw.com
Francesca Russo, Esq.
frusso@etlaw.com
Robert R. Jimenez, Esq.
rjimenez@etlaw.com
GRAY | ROBINSON, P.A.
333 S.E. 2nd Ave., Suite 300
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-416-6887

*Attorneys for Plaintiffs*
*SISVEL INTERNATIONAL S.A.*
*and SISVEL S.p.A.*